# United States District Court, Northern District of Illinois



| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1822 | **DATE** | 2/22/2001 |
| **CASE TITLE** | Karen A Koerber vs. Journey's End, Inc. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Memorandum Opinion and Order

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing held.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's motion for summary judgment is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | | |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | FEB 2 3 2001 | | 39 |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | LS | | |
| | Mail A 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | date mailed notice | | |
| LG | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | | |

C. FEB 23  AM11:44

UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION.

DOCKETED

FEB 2 3 2001

KAREN A. KOERBER,

    Plaintiff,

    v.

JOURNEY'S END, Inc.,

    Defendant.

Case No. 99 C 1822

The Honorable John W. Darrah

## MEMORANDUM OPINION AND ORDER

Plaintiff Karen A. Koerber ("Koerber" or "Plaintiff") has filed suit against Defendant Journey's End, Inc. ("Defendant") for sexual harassment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended 42 U.S.C. § 2000(e) et seq. (A.Compl. 2). Koerber alleges that Defendant's bar manager continually harassed her because of her gender. Defendant Journey's End has moved for summary judgment pursuant to FED.R.CIV.P. 56. For the reasons that follow, the Court DENIES Defendant's Motion for Summary Judgment.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses..." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party

on a motion for summary judgment is responsible for demonstrating to the Court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate through specific evidence that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a Court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## BACKGROUND

The undisputed facts taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1") and exhibits are as follows.

Plaintiff Karen Koerber began work as a part-time cocktail waitress for Journey's End, a restaurant and bar in Mundelein, Illinois, in August, 1993. (Def.'s 56.1 ¶ 1). She was hired by Ernest Young, the bar manager. (Def.'s 56.1 ¶ 8). Young supervised Koerber's employment and had the authority to take shifts away from her, discipline her, or terminate her employment. (Def.'s

56.1 ¶ 13). Koerber worked in the "Annex", a bar adjacent to the restaurant. (Def.'s 56.1 ¶ 2). Young had been hired as the bar's manager in 1992. (Def.'s 56.1 ¶ 3). Koerber worked part-time at the bar, occasionally holding other positions at a tanning spa and a bridal salon. (Def.'s 56.1 ¶ 9). On average, Koerber worked two nights a week. (Def.'s 56.1 ¶ 10). At all relevant times, the bar and restaurant were owned by Greg DiPiero, Donna DiPiero (husband and wife), and George Orfanos. (Def.'s 56.1 ¶ 17).

During the Spring of 1994, Jennifer Denney, a high school friend of Koerber, spoak to Koerber about a job opening at the Annex lounge. (Def.'s 56.1 ¶ 34). Denney began work at the lounge in March, 1994. (Def.'s 56.1 ¶ 35). Denney terminated her employment at the lounge in April, 1994. (Def.'s 56.1 ¶ 36). At the time Jennifer Denney inquired about employment, Koerber considered herself a victim of sexual harassment. (Def.'s 56.1 ¶ 37). Koerber considered the alleged harassment to be humiliating but was too embarrassed to talk about it with Denney. (Def.'s 56.1 ¶ 40).

On one occasion in April, 1994, Denney told Koerber that Young had tried to grab her breast when Denney was in the office. (Def.'s 56.1 ¶ 41). Young had been drinking in the bar before the incident. (Def.'s 56.1 ¶ 42-43). Koerber then asked Denney if she wanted to return to the lounge to check if the owners were there to discuss the incident. (Def.'s 56.1 ¶ 44). Denney's husband later called Greg DiPiero and advised that Denney was not coming back to work. (Def.'s 56.1 ¶ 46).

Soon after, Greg DePiero met with Young concerning Denney's allegations; DePiero asked Young what had happened and told Young that he had to "keep his hand off all the girls no matter what." (Def.'s 56.1 ¶ 48). Donna DePiero met with Ernie Young and reviewed a 20-page memo from the State of Illinois concerning sexual harassment. (Def.'s 56.1 ¶ 49). Defendant did not have

a written policy regarding sexual harassment. (Def.'s 56.1 ¶ 49). Concerned that Young was married with children, the owners gave him a "last chance agreement." (Def.'s 56.1 ¶ 56). Young had been drinking when the Denney incident occurred. Young ceased drinking and using drugs in April, 1994 and was advised by Greg DiPiero to seek counseling in order to continue working at Annex Lounge, which Young did. (Def.'s 56.1 ¶ 58).

On June 27, 1994, Koerber met with Denney's attorney and told him that Young had brushed up against her breasts, touched her bottom, solicited sexual favors, and asked her to change shirts in front of him. (Def.'s 56.1 ¶ 52). The attorney told her she was a victim of sexual harassment. (Def.'s 56.1 ¶ 53). The attorney offered to represent Koerber in a sexual harassment suit; but she declined, saying she couldn't afford to lose her job. (Def.'s 56.1 ¶ 54, 55).

During the period between August, 1996, and January, 1997, Koerber claims that Young, while in the bar in front of employees and customers, would occasionally "grab her bottom." (Def.'s 56.1 ¶ 15). Young would grab her, pat her bottom, and make various comments. (Def.'s 56.1 ¶ 64). In one instance, Young offered Koerber money in exchange for sexual favors. (Def.'s 56.1 ¶ 73). Koerber did not report this conduct to any owner of Defendant during this time period. (Def.'s 56.1 ¶ 65). Koerber never spoke to any of the owners because she "didn't feel it would do any good." (Def.'s 56.1 ¶ 77).

Koerber met with Greg DiPiero on December 11, 1994, and told him that she was uncomfortable with Young's conduct and sexual comments. (Def.'s 56.1 ¶ 113). Again on June 8, 1995, Koerber met with Greg DiPiero, Ernie Young, Donna DiPiero, and George Orfanos after Young had called her at home. During the meeting on June 8, 1995, Koerber told her employers that she "wanted Ernie's conduct to stop" and that she "did not want him to call [her] at home anymore

unless pertaining to work related issues only." (Def.'s 56.1 ¶ 118).

In January of 1997, Young took the Superbowl shift away from Plaintiff. (Def.'s 56.1 ¶ 15). Plaintiff had previously called in to cancel two of her scheduled shifts. (Def.'s 56.1 ¶ 15). A few days before Koerber quit, Koerber complained to Donna DiPiero about the fact that Young had taken away her shift on Super Bowl Sunday because she had missed two previous shifts. (Def.'s 56.1 ¶ 66). During this conversation, Koerber told Donna DiPiero that Young had brushed her breasts and had inquired of her boyfriend "how it was to have sex with her." (Def.'s 56.1 ¶ 68).

Koerber quit her employment at the Annex on January 29, 1997. (Def.'s 56.1 ¶ 91). Plaintiff filed a charge with the Equal Employment Opportunity Commission on June 17, 1997. (Def.'s 56.1 ¶ 145). The 300-day period previous to her filing extends back to August 21, 1996. (Def.'s 56.1 ¶ 148).

## ANALYSIS

Plaintiff Karen Koerber has sued Journey's End, Inc. for sexual harassment under Title VII based on the conduct of Larry Young, Defendant's bar manager. Defendant Journey's End argues it is entitled to summary judgment for three reasons: (1) the statute of limitations bars suit on much of Young's conduct; (2) Defendant has proved an affirmative defense that it took reasonable steps to prevent occurrences of sexual harassment, and Plaintiff unreasonably failed to take advantage of corrective opportunities; and (3) Plaintiff was not constructively discharged.

### *Statute of Limitations*

Before filing a Title VII discrimination suit in federal court, a Plaintiff must bring a charge of discrimination with the EEOC within 300 days of the alleged acts giving rise to his or her claims. *See e.g., Koelsch v. Beltone Elecs. Corp.,* 46 F.3d 705, 707 (7th Cir. 1995). Acts of discrimination

which occurred outside the 300-day period are time-barred both before the EEOC and in federal court unless the Plaintiff can demonstrate that they are part of a continuing violation. "[T]he plaintiff must demonstrate that "there has been a pattern or policy of discrimination continuing from outside the limitations period into the statutory limitations period, so that all discriminatory acts committed as part of this pattern or policy can be considered ... timely." *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344 (7th Cir. 1999). The continuing violation doctrine recognizes that, in some cases, earlier incidents of discrimination may only be recognized as actionable "in light of events that occurred later, within the period of the statute of limitations." *Hardin*, 167 F.3d at 344. However, "[w]here a pattern of harassment spreads out over years, and it is evident long before the plaintiff sues that she was a victim of actionable harassment, she cannot reach back and base her suit on conduct that occurred outside the statute of limitations." *Id.*

By the Spring of 1994, Plaintiff considered herself to be a victim of sexual harassment. (Def.'s 56.1 ¶ 37). Plaintiff was informed by an attorney on June 27, 1994 that her treatment by Young constituted actionable sexual harassment. Therefore, the Defendant argues that the continuing violation doctrine is inapplicable in this case because Plaintiff knew Young's conduct was actionable as far back as 1994 and Plaintiff is limited to recovery on acts which occurred after August 21, 1996 (within a 300-day period of her EEOC claim). In light of the continuous nature of the various acts and the pattern of conduct they present, this matter is one which is best resolved at trial. A reasonable juror might find that a pattern or policy of discrimination existed at the Annex. The evidence at trial will be limited to matters which are relevant and material to all the issues presented.

### Affirmative Defense

Defendant has asserted an affirmative defense under *Burlington Industries v. Ellerth*, 524

U.S. 742, 188 S.Ct. 2257 (1998). Under *Burlington*, a defendant in a sexual harassment suit may succeed if it can show that: (1) it exercised reasonable care to prevent and correct promptly any sexually harassing behavior; and (2) the plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities.

Although Defendant implemented a "last chance policy" with Young in April of 1994, after the Denney incident, material issues of fact exist as to whether this constituted "reasonable care" and whether Plaintiff unreasonably failed to notify the owners that Young continued his harassment.

Following Jennifer Denney's departure and subsequent lawsuit in April of 1994, Young was presented with the "last chance agreement." However, in December of 1994, Denney met with Greg DiPiero and informed him that she was uncomfortable with Young's conduct and sexual comments. (Def.'s 56.1 ¶ 113). Yet again on June 8, 1995, Koerber met with Greg DiPiero, Ernie Young, Donna DiPiero, and George Orfanos and told them that she "wanted Ernie's conduct to stop" and that she "did not want him to call [her] at home anymore unless pertaining to work related issues." (Def.'s 56.1 ¶ 118).

Given Young's persistent behavior stretching over a period of years, it cannot be said as a matter of law either that: (1) Defendant exercised reasonable care to prevent and correct this sexual harassment; or (2) Plaintiff Koerber acted unreasonably in failing to complain about Young's conduct during the period of August 21, 1996 up until her second resignation in January of 1997.

It is not clear as a matter of law that Karen Koerber acted unreasonably here. A reasonable juror could find that based on Koerber's two meetings with management, it was reasonable for her to think that further discussions with management would be futile.

*Constructive Discharge*

Defendant argues that Plaintiff cannot recover backpay because she was not constructively discharged.

"To state a claim for constructive discharge, a plaintiff needs to show that his [or her] working conditions were so intolerable that a reasonable person would have been compelled to resign." *Rabinovitz v. Pena*, 89 F.3d 482, 489 (7th Cir. 1996). "Not only must conditions be intolerable; for a Title VII constructive discharge to succeed, they must be intolerable because of unlawful discrimination." *Drake v. Minnesota Mining & Manufacturing Company*, 134 F.3d 878, 886 (7th Cir. 1998).

In this case, Koerber alleges that Young repeatedly made sexual comments to her, including solicitation of sexual favors. (Pl.'s 56.1 ¶ 18-21, 35, 36). Plaintiff further alleges that Young brushed his hands against her breasts and buttocks, following her while she tried to do her job. (Pl.'s 56.1 ¶ 26-27). Plaintiff also claims Young pointed at her breasts and commented on them in front of customers. (Pl.'s 56.1 ¶ 29-33). Plaintiff asserts that Young, on another occasion, grabbed her and kissed her on the lips. (Pl.'s 56.1 ¶ 48). Viewing the apparent failure of her earlier complaints, it cannot be said that Plaintiff was not constructively discharged as a matter of law. A reasonable juror could find that this situation was so intolerable as to compel an individual to resign. Defendant contends that Plaintiff resigned as a result of a work scheduling disagreement. A determination regarding the credibility of Plaintiff's alleged motive is not proper in when considering a motion for summary judgment. *See e.g., Fisher v. Illinois Dept. of Corrections*, 51 F.Supp.2d 883, 889 (7th Cir. 1999)(Aspen, J.).

## CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED.**

_____
John W. Darrah, Judge
United States District Court

Date: _February 22, 2001_